Good morning, your honors. It may please the court, my name is Will Thomas. I'm appearing on behalf of the appellant, the estate of Luqman A Abdulla. Your honors, there are four issues that the appellants have brought before the court this morning. The first concerns whether or not the estate's amended complaint was filed timely and the approval date of the statute of limitations. The second issue concerns the applicability of the Relation Back Doctrine under Federal Rule of Civil Procedure 15C. The third issue is the applicability of the Fraudulent Concealment Doctrine. And the fourth and final issue concerns matters can the district court sue a sponte dismissal of the estate's amended complaint with regard to the FBI agents listed in the amended complaint. Could I ask a preliminary question? What are the appellees before us? The appellees before us are Mr. Arena and Mr. Nicolopoulos. Mr. Arena was the S-2 then? Yes. So this case only involves the two and doesn't involve the other four? This appeal? This appeal just involves those two, yes your honor. But your honor, when the district court issued its motion granting the appellees motion to dismiss, it also sue a sponte dismissed the amended complaint with regards to the four FBI agents. But it's not an issue before us at all? Not before the court, your honor. Your honor, turning to the first issue before the court, there is an important window of time that is applicable. Mr. Abdullah was shot and killed by the FBI on October 28, 2009. His claim is one of personal injury, which according to Michigan statute has a three year statute of limitations. The estate's amended complaint was filed on April 18, 2013. Working back three years from that, we have April 18, 2010. There is a window of time between October 28, 2009 and April 18, essentially 2010. If this court finds that the estate's claim should have been discovered and did accrue during that window, the estate's amended complaint is untimely. If this court finds that the estate's claim accrued outside of that or any time on or after April 18, 2010, the estate's amended complaint is timely. Knew the names during that time? During that window of time? During the time that you just said it would be untimely. It knew the names. The estate did know the names of all the parties, your honor. And your honor, in general, this is a constitutional tort claim. And generally, this court follows that in constitutional torts, the claim accrues at the time that the act occurred because it is assumed that the wronged plaintiff would know that their rights had been violated at the time in which the act occurred. It's pretty clear when that happened. That is absolutely clear, your honor. It's undisputed. That's on October 28, 2009, the FBI shot and killed Mr. Abdullah. And that was public knowledge at the time by virtue of the FBI's press release. But this is not an atypical constitutional tort case. Because in an atypical case, the knowledge aspects of the act and the injury are unified. The individual generally survives. That's in a typical case or an atypical case? In a typical case, your honor. The wronged plaintiff would have survived the encounter. They would have known what happened to them. They would have known their rights were violated. In our case, that was bifurcated upon Abdullah's death. His knowledge of the wrongfulness of the actions of the FBI were known to him potentially. But he died and the truth died with him. So it was upon the estate to discover that there was an injury underlying the FBI's shooting of Mr. Abdullah. And that's where the discovery rule that this court follows is so applicable here. You knew who was there with him as well, right? It's yes and no, your honor. The FBI press release that was issued the exact same day of the shooting said that a federal complaint was unsealed, listing 11 individuals charged in that criminal complaint. Seven of those individuals were arrested on that day. Mr. Abdullah was killed and three were still at large on that day. Of those seven individuals, the press release said that four of them were also in the warehouse with Mr. Abdullah at the time that he was killed. It does not list the four that were in the warehouse. And according to the district court, the fact that the estate knew the names of these seven individuals, it could have or should have sought them out and found their locations first and then discovered what they did or did not know. Importantly, Mohammed Salam was one of those seven individuals and who plays a key role in this case. Mr. Salam gave an affidavit in October 25, 2012, the day before the original complaint was filed, in which he said that the FBI sicced a dog on Mr. Abdullah. How did you come to get that affidavit? The representatives of the estate, which is the Council of American Islamic Relations for the state of Michigan, sought out Mr. Salam. It was a mutual event in 2012, finding him, discovering what he knew, and convincing him to affide to what he saw finally. Why then and not before? His location and his whereabouts were unknown until that time. I believe, Your Honor, this is quite large, and that information got back to the Council of American Islamic Relations and after that, they sought out Mr. Salam. But he was imprisoned, wasn't he, for some time? He was imprisoned. Well, that's another kind of gray area, Your Honor. We know, according to the information in the record and from what was disclosed from the Bureau of Prisons, that he was taken into custody on October 28, 2009, and that he was sentenced by the District Court to 10 years in prison. He was during the interim, and what was going on during the interim are unknown. But that's the information. There may be some information in the Bureau of Prisons printout that discloses by acronym the location, but it was not readily known. No, neither was the location of the other six individuals who were arrested along with Mr. Salam on that day. But according to the District Court, it was reasonable diligence would have, A, found the location of the seven individuals, and also it is assumed that upon being found, Mr. Salam would have disclosed what he disclosed in October 2012. But the estate profits that there are three issues concerning those assumptions. First, as Judge White just pointed out, the location wasn't readily known, or any of the locations of these seven individuals was not known. Could it have been discovered through reasonable diligence is unknown, because standing here before you don't know how they could find out the exact locations of them. The FBI certainly wasn't in a position during that time, because of the ongoing investigation, to provide that information voluntarily. But even assuming we could find these seven individuals, it is not automatic that Mr. Salam would have provided the information that he did in October 2012 for three very important reasons. It seems like the theory of statute of limitations is you know you've been wronged, or you know that you've potentially been wronged, you know who did it, you know when it happened, and you have the period of the statute of limitations to gather your evidence. Absolutely, Your Honor, but... Well, if you turn it into the statute of limitation runs when you gather enough evidence, then you've sort of undermined that theory of the statute of limitations, haven't you? That would be yes, Your Honor, and that's why this Court says it's not when you've gathered all that evidence you're ready to go. But that sounds like what you're arguing for here, is when we finally got enough evidence that there was a wrong that we can demonstrate, that's when the statute runs. That just isn't sort of standard statute of limitations analysis, is it? No, Your Honor, it's when we reasonably should have discovered through reasonable diligence. So not when we had uncovered all that information, it's at what point in time was there a path opened up for us to pursue evidence? It doesn't matter if we gathered the evidence, but it's whether or not the path existed. And knowing Mr. Salon may or may not have been inside the warehouse, it's no guarantee that the information that he provided us in October 2012, he would have provided in the fall of 2009. First, he was under, he's been charged by a criminal complaint, there was undoubtedly a federal indictment forthcoming, trial, possible imprisonment. Whether on his own volition or by advice of counsel, he could have been told to keep his mouth shut, just in the interim that you don't want anything used against you in the possible criminal trial that you're facing. Second is fear. If what Mr. Salon replied to is true, then he saw an acquaintance of his attacked, unprovoked by an FBI dog, and then shot more than 20 times by the FBI and what happens if I come out against the FBI and back a civil lawsuit against them? What could happen to me? This was, he was shot in front of everybody. And then the third is possible negative legal consequences. If it comes out that he is against the FBI and one of the chief individuals backing a civil claim against the FBI, then the United States Attorney might be disinclined to give certain leniencies to Mr. Salon out of a perception of him being uncooperative. What those three important facts show is it's unknown whether Mr. Salon would have given that information in the fall of 2009 or not, and certainly whether or not we could have reasonably discovered it from him. But the important part, Your Honor, is that whether he would have given that information or not in the fall of 2009, Mr. Salon knows whether he would or he wouldn't. And the important part is that the time runs from when they got that information. Your Honor, the time runs from when we reasonably could have discovered the information. Which is when? We believe that that time is after April 2010. Most pragmatically, it would probably be when he was released from prison, which would be in October 14, 2011. When was the suit filed? The original suit was filed on October 26, 2012. The amended complaint was filed on April 18, 2013. They were both within three years of that time, you're suggesting? Yes, Your Honor. And the important part is Mr. Salon, what he would have or would not have shared with the estate if approached in 2009, he knows whether he would have or would not have. And how we find out that information is for this court to reverse the judgment of the district court, allow discovery, allow Mr. Salon to be deposed by both sides to find out what he did or did not know and when he knowed. And then it still gives the opportunity of Mr. Arena and Mr. Nikolaopoulos and the foreign identified FBI agents, if they're still on the case, to continue and to pursue a motion for summary judgment, depending on what Mr. Salon says. But since we don't know that information, anything would just be guessing. There were other survivors, right? Yes, there were. And have they been interviewed? To my knowledge, Your Honor, they either have not been interviewed or they had no evidence to proffer about what did or did not happen. The four individuals were told to get down on the ground and put their hands on the ground. Their heads were down. There was tactical diversionary devices that were used as well. It just, Mr. Salon was in a unique position to see everything that happened at that time. And Your Honors, I see that my time has expired. For the arguments presented today and in the briefing, we ask that this Court reverse the judgment of the District Court. Thank you. Good morning, Your Honors. I'm Evan Kamenker, representing the two named FBI agents, Arena and Nicolopoulos, in their individual capacities. The Abdullah estate did not sue these individuals within the limitations period, and their efforts to avoid the consequences are not persuasive. I would like to focus first on the question of accrual. The law in this circuit is extremely clear that a cause of action for wrongful death or some other personal injury accrues at the moment that the injury takes place or the acts constituting the injury take place. The argument of the plaintiff that suggests that the accrual doesn't occur until they have amassed some understanding of the potential wrongfulness of that injury has been rejected repeatedly by this Court. The Freeman case holds that what matters is when the harm occurs, not when the plaintiff understands or accrues evidence supporting the harm. And the Hornback case that the plaintiff cites in his own reply brief makes very clear, for example, that a cause of action for an illegal search and seizure takes place at the moment of the seizure, not later when the plaintiff comes to understand. Would that be even if they didn't know who did it? Um, there... They just didn't know? I mean... No, there are... The arrow struck me, and I got, and somebody must have shot it, and I don't have a clue who. Do I... No, Your Honor. Four years later, we find out who shot the arrow? There is a discovery rule that basically says under certain kinds of circumstances, either where the harm is not immediately evident, such as a toxic issue or a medical malpractice case, or in some cases where the cause of the harm is not immediately evident, that maybe you delay discovery until those things. Why doesn't it fit within that? Because neither... The rule you were stating was a little... sounded like it would preclude that as well. No, the Court, I'm sorry, this Court's cases have clearly held that the knowledge that the injury, and that's it. So if there are circumstances in which you don't know about the injury or you don't know about the harm, then perhaps accrual is delayed. But that's not this case. It is very clear from the moment of the shooting and the FBI press release that very day that there was a harm, there was an injury, there was a death, and it was caused by the shooting of, uh, by the FBI agents. All of those are satisfied. So under the longest definition, most capacious definition this Court has ever applied to the discovery rule, all of the elements that the Court looks to were found and known on October 28th. The fact that the plaintiff unfortunately died in the event does not itself delay the accrual. There are plenty of cases with accidental car, car deaths, or plane crashes, or things of that sort. Uh, and in those circumstances does this Court ever say that the accrual of a cause of action does not happen at the moment of the injury, even if the injury is death. Turning to the fraudulent concealment claim, um, as we have explained, there are several elements under Michigan law that have to be established in order for the plaintiff to even state a claim under fraudulent concealment. And they have not satisfied. Let me go back. What do you do if there's no way of knowing that the facts that have been presented, which would represent that there was no wrong, there was a shot, but there was no wrong being done, no constitutional wrong, what happens if those facts are not available until a later date? Your Honor, it depends on why they're not available. If they're not available because of fraudulent concealment, which we can talk about in a second, then that operates under the statute of limitations regime to give the plaintiff more time. If they are simply unavailable because the plaintiff is unable to discover them during the normal period of time that the statute provides them, then unfortunately it may mean that there is a claim that cannot be prosecuted. It would be a very odd rule to say that a claim does not accrue until the plaintiff amasses enough evidence to think that they can go to court. That would essentially mean the statute of limitations is never triggered until the plaintiff is ready to go. Well, there's room in between. There's certainly light between those two positions. It's one thing to say, and I think we all agree, that you can't have a rule that says when you get your case together, then you have enough, then the statute starts to run. Obviously that can't be it. And there has to be some reasonable conduct, reasonable inquiry, et cetera. But posit a case where only one person knows the facts and that person has disappeared. Yes, Your Honor. Under those circumstances, it is still the obligation of the estate of the decedent to have the period of the statute of limitations that is set aside by the legislature to investigate their claim as diligently as they can and try and come up with evidence that supports their claim. It does unfortunately mean that there may be meritorious claims that sometimes cannot be filed within the statute of limitations. That's what a statute of limitations... So if you could not have diligently discovered it within that period? If there's a particular reason it could not have been discovered, then that might be a reason under tolling doctrine. Again, fraudulent concealment is the plaintiff's argument for that. If there's a reason, let's say a medical malpractice kind of case, that there's some reason why it is just inherently unknowable, then that might be a reason to apply the discovery rule. But those are far afield from this particular case. The plaintiff's suggestion would be that any time there's a wrongful death action, the statute of limitations is never triggered until, as you suggest, the plaintiffs are able to come up with enough evidence. And there is no authority whatsoever for that proposition. I wonder if I could modify Judge White's hypothetical. Could we draw the line at whether they knew it was wrongful? So you know somebody did something bad, but you don't know how it happened, or you don't have enough evidence that it did, but you suspect it. That might be one thing, but where... Like if you were poisoned, for instance, and you know that the person died, and all the that the person was served a drink of coffee the day before by so-and-so, but you don't have any idea that it was wrongful because there's no evidence of poisoning, and then that comes at the end, you would still say that was not accrued? I would not, Your Honor. But it's not because the plaintiffs in that situation haven't discovered that the act was wrongful. It's because, in your hypothetical, the plaintiffs don't have reason to know that there was an injury. They know that there was a harm. They know that they died. I mean... Yes, that's the harm. They don't know. This is the medical malpractice cases. They don't know that there was an underlying injury. These are cases... But you're interpreting, I mean, in common parlance, injury and harm. I mean, if my arm falls off, I've been injured, but you're saying, oh no, if your arm falls off, it's only an injury if it was wrongful? No, Your Honor. This Court's case is dealing with a discovery rule. For example, a medical malpractice case. They do distinguish between the language of the act that causes the injury and the harm that accrues. For example, an injury might be, during an operation, the doctor accidentally leaves a sponge inside of a person. The harm may not accrue for six or seven months later when something about the sponge causes damage to the kidney. So there is a distinction in certain cases. Not in this case. The harm here was the arguable use of excessive force in the, I'm sorry, the injury, and the harm was the immediate death that suffered. So, Your Honor, in your hypothetical, that's an application of the discovery rule. If there's some reason why the plaintiff knows they've been harmed, but they don't know the source of the injury, or conversely, it could be the opposite. They know the injury. They got an immunization, but it's only a year later that they end up becoming paralyzed because of it. There are cases where there's a disjunction between the act. Focusing on the question, you know, you're not honing on the difficulty that we're focusing on. I'm sorry, Your Honor. I don't think in your examples. We're trying to talk about a situation where the plaintiff is aware of the injury. Now, I may be using that word in a way that you don't use it, but aware of the injury, but not aware of the wrongful nature of it. Yes, Your Honor. And this Court has clearly rejected that proposition. As I said, the Hornback case that is cited by the plaintiff in his reply brief clearly says that a cause of action for an illegal search and seizure arises at the moment of the illegal search and seizure, and rejected the plaintiff's argument in that case that the cause did not accrue until months later when a judge granted his motion to suppress evidence, when he argued was the first time he had reason to believe that the search was actually illegal. But whatever facts he knew to support his motion to suppress evidence, he knew at the time of the search. He did not necessarily know it was wrongful, and that's responsive to your inquiry. But there's a difference between, yes, I understand that distinction, but he knew the facts, and he could have drawn his own inference that they were wrongful. Here the claim is that they didn't know the specific facts. All they knew is that there was a shooting, and that there was a claim that this person drew a gun, and they didn't know the facts. They couldn't know the facts until someone who was there told them the facts. I understand, Your Honor. And then you get into the question of what's reasonable diligence. I agree, Your Honor. And one would have thought that, okay, you have a list of names, you make inquiry. But now they're raising the issue that maybe there's a question of fact as to when that if, in fact, this person was in jail, this person had reason not to disclose until some later date. And I think the question is whether they're entitled to a hearing on that. Yes, Your Honor. Even if they had such a hearing, Your Honor, it's hard to imagine how that would actually produce light on this subject. But in terms of diligence, Your Honor, I think it is very clear that they did not diligently pursue this claim in the manner you're suggesting. Mr. Salam was in prison in Elton, Ohio, for approximately two years, very close to Michigan. It was easy to find out where he was located, and it would have been very easy to go find and talk to him. The plaintiffs are speculating about whether or not he would have provided this information until three days before the statute of limitations ran. But the requirement under Michigan law of a showing of diligence, which has to be pleaded with particularity in the complaint in order to even state a claim, requires the plaintiff to show the acts of diligence. It's not a question of whether they might or might not have been successful. In this case, the plaintiffs have not pled anything about any effort whatsoever to talk to Mr. Salam until three days before the statute of limitations ran. They have not pled any effort whatsoever to talk to any of the other individuals who theoretically could have been eyewitness or at least audible witnesses to the event, even though some of those individuals, there was only one individual of all of these that is still in prison. Mr. Salam got the next longest prison sentence, so everybody else was either in prison with Mr. Salam or had already been released. All of them are perfectly available, and the law of both accrual and tolling makes very clear that the point of running the statute of limitations is the plaintiffs are put on notice by a specific event, here clearly knowable on October 28th, that they need to work hard to preserve their rights. And in this case, the plaintiff did not do that. Counsel, what I want to ask is how the argument you're currently making relates to this relation back argument. Yes, Your Honor. Is that an alternative argument and you win on either one or do you have to win on both of them? No, Your Honor. We would have to, the plaintiff only has to win on one of these alternative arguments. Either accrual was delayed or they get to relate back their amendment. On that issue, however, Your Honor, I think it is very clear. Rule 15C specifically states that one of the conditions for permission back is that Arena and Nikolaopoulos would have known or should have known that they were intended targets of this lawsuit, but for a mistake concerning their identity. It is telling that up until this point in time, including after oral argument, the plaintiff has never even identified what was the nature of the mistake that they're claiming. But it cannot be a mistake concerning identity. They knew full well two years before the statute of limitations ran both the names, the roles, and the status of Arena and Nikolaopoulos. So whatever mistake they made, was it a drafting error? Was it a pleading error? It was not a mistake concerning the identity of Arena and Nikolaopoulos. I suggest that... Well, the focus, I think, is on what they would know. Are there allegations in the complaint that a reader would know, oh, they're talking about me? No, Your Honor. Your Honor, I think the answer to that question is also no, but that's a separate argument. If I believe that it's fairly read, the complaint seems to be targeting the shooters. The four times that the complaint mentions the role of the unidentified FBI agents in, I believe it was paragraphs 24, 27, 32, and 39, all of those equate the unidentified FBI agents with either somebody who deployed the dog or actually shot Mr. Abdullah. None of them go to any conduct that has to do with any supervisor. And there is, under ITPL, there is no supervisorial liability under Bivens. So Arena and Nikolaopoulos could only be sued if there were statements in the complaint that specifically talked about what a supervisor did or did not do in terms of instructing the activity below or not. It seems to me, in my view, it seems to me that this was probably a strategic decision by the estate to focus on the shooters for a variety of reasons, including that they had no evidence linking any decision by Arena or Nikolaopoulos to the events. But whether that's true or not, Your Honor, in answer to your question, that is certainly the way that Arena and Nikolaopoulos would have read the complaint. But the most important fact is they knew that the plaintiffs had known their name for two and three years. They knew that they could have been sued, and the mere fact that they were not named in the complaint makes clear that they were non-intended targets. Your Honors, I submit that none of the reasons given by the plaintiffs for circumventing the statute of limitations hold here, and therefore you should affirm the court's dismissal  Thank you, Counsel. Thank you. We have rebuttal. Your Honors, three very quick points in rebuttal. First, going back to the accrual arguments that Brother Counsel just made, with regard to the Hornback case that he was discussing, that was a search and seizure case. And what this court decided is that Mr. Hornback knew at the time of the search that he wasn't on probation, that they had no right to search his house without permission or without a warrant, and that they didn't have a warrant. All that was known at the time of the search, and therefore his knowledge about both the injury and the wrongfulness was unified at that same time, and he knew. The second point is on October 28, 2009, and between that point and that window of time, the only thing that was known was the FBI narrative, that Abdul had pulled a gun, had shot at the FBI, and the FBI killed him because they feared for themselves. That was the only narrative that had been exposed at that time, and that was the only thing that anybody knew, including the estate. So the FBI controlled what was going on. Maybe the estate would have had suspicions about Mr. Abdul being a peaceful person. He never had a gun. But that's not facts. That's not something that can be pled in a complaint without getting past Iqbal and Twombly in Rule 11. And the final point, Your Honors, very quickly, with regard to what Brother Counsel just said about the original complaint and whether Arena and Nicolopolis should have known that they were included in that, the paragraph that identifies the individuals that the amended complaint or the original complaint is meant for describes the entire FBI tactical team from top to bottom that was involved in the shooting incident on October 28. That would include everybody from Mr. Arena to the lowest personnel to the shooters in the middle. And so on that basis, they would have had knowledge of the suit when the original complaint was filed. And, Your Honors, for the reasons set forth in the brief and that oral argument today, the estate respectfully requests that this Court reverse the judgment of the District Court. Thank you. Thank you. The case will be submitted. Thank you. Please call the next case.